# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 19-cv-3496-WJM-MEH

EMAIL ON ACID, LLC,

     Plaintiff,

v.

250OK, INC., formerly 250ok LLC,

     Defendant.

---

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

---

In this removed action, Plaintiff Email on Acid, LLC ("Plaintiff") sues Defendant 250ok, Inc. ("Defendant") for breach of contract, unjust enrichment, and misappropriation of trade secrets in violation of the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 to -110.  (ECF No. 6.)  Currently before the Court is Plaintiff's Motion for a Preliminary Injunction ("Motion").  (ECF No. 14.)  For the reasons explained below, the Motion is denied.

## I. BACKGROUND

The following facts are assumed as true for purposes of the Court's consideration of the Motion.  In 2009, Plaintiff launched an e-mail quality assurance software-as-a-service, a proprietary offering that allows e-mail marketers to preview how a particular e-mail will look in various e-mail platforms (*e.g.*, Gmail, AOL) on mobile, desktop, and web-based applications.  (ECF No. 14-3 at 1, ¶ 3.)  Plaintiff's software, colloquially known as an "e-mail-previews service," provides a screenshot of how a particular e-mail

will look in each e-mail environment.  (*Id.*)  Plaintiff and another company, Litmus, are
the two most popular e-mail-previews service providers and serve most of the global
market share.  (*Id.* at 2, ¶ 4.)  Plaintiff is a more cost-effective provider than Litmus, and
offers its services for about half the cost of Litmus.  (*Id.*)  Plaintiff's customers are billed
monthly, annually, or by usage.  (*Id.*)

Defendant provides e-mail marketing support that permits its customers to gather
insight on e-mail analytics, deliverability, sender reputation, fraud protection, and
consumer engagement. (ECF No. 23-1 at 1, ¶ 2.)  Since 2014, Defendant has offered a
product called 250ok Design, which incorporates a feature that previews how an e-mail
will look in various platforms.  (*Id.* at 2, ¶ 5.)  As of 2015, Defendant's e-mail rendering
feature was powered by Litmus.  (*Id.* at ¶ 7.)

On August 3, 2015, Plaintiff and Defendant entered into an API License
Agreement ("Agreement"), which granted Defendant permission to use Plaintiff's "white-
label" version of its e-mail-previews service.  (*Id.* at ¶ 8; ECF No. 14-3 at 3, ¶ 5.)

Section 15, the Agreement's intellectual property provision, provides that "[o]ther
than the limited use and access rights and licenses expressly set forth in this
Agreement, [Plaintiff] reserves all right, title and interest (including all intellectual
property and proprietary rights) in and to" its API services, marks, or technology and
software provided or used by Plaintiff.  (ECF No. 14-1 at 6.)  Under "permitted uses,"
Section 13(e) of the Agreement expressly states that "[a]t no time under this agreement
shall [Defendant] build or create any product that directly competes with [Plaintiff's]
Email Previews service."  (*Id.*)

Section 17.2 of the Agreement provides:

> a breach or threatened breach by a Party of the provisions of
> Sections 2 (Intellectual Property Rights); 15 (Intellectual
> Property) and/or 16 (Confidentiality) will cause irreparable
> damages to the non-breaching Party and in the event of
> such a breach, the non-breaching Party will have, in addition
> to any other rights it may have, the right to seek equitable
> relief, including injunctive relief without an obligation to prove
> actual damages, post bond or any other security.

(*Id.* at 7.)  Finally, Section 17.8 states:

> In addition to any other terms that, by their nature survive
> expiration or termination, the following provisions will survive
> any expiration or termination of this Agreement: Sections 2
> (Intellectual Property Rights; 6 (Limitation of Liability); 8.3
> (Effect of Termination); 7 (Indemnity); 15 (Intellectual
> Property); 16 (Confidentiality); and 17 (Misc.).

(*Id.* at 8.)

Although Defendant continued to primarily use Litmus for its e-mail previews, it used Plaintiff's software as an alternative because of stability issues with Litmus.  (ECF No. 23-1 at 2, ¶¶ 10–13.)  Defendant, evidently not satisfied with Plaintiff's service, chose to develop its own e-mail rendering service.  (*Id.* at ¶ 15.)  Defendant now provides its own e-mail-previews service to customers as part of its suite of services, instead of Plaintiff's service.  (*Id.* at 4, ¶ 26.)

In May 2018, Defendant's CEO Greg Kraios apparently mentioned to Plaintiff's CEO John Thies that Defendant had started to develop a competitive product.  (ECF No. 14-3 at 3, ¶ 8; ECF No. 23-1 at 3, ¶ 20.)  At that time, Thies "advised [Kraios] against it." (ECF No. 14-3 at 3, ¶ 8.)  In June 2019, Plaintiff saw an advertisement online in which Defendant marketed itself as a substitute service provider to Plaintiff. (*Id.* at ¶ 10.)  At that point in time, Plaintiff learned that Defendant had forged ahead and

created its own e-mail-previews service.  (*Id.* at 4, ¶ 11.)  Plaintiff asked Defendant to remove the advertisement, and Defendant agreed to do so.  (ECF No. 23-1 at 4, ¶ 28.)  On July 2, 2019, Plaintiff provided notice of termination of the Agreement, and the Agreement terminated on August 1, 2019.  (ECF No. 14-3 at 4, ¶ 13.)

After finding Defendant's advertisement, Plaintiff reviewed its contracts with other customers, and determined that Defendant "likely approached a mutual customer, Maropost, back in December of 2018 to persuade them to switch their email-preview[s] service."  (ECF No. 26-1 at 2, ¶ 13.)  Plaintiff was "able to keep the customer as a client but had to significantly reduce [its] email-preview[s] rates in order to do so."  (*Id.*)  There are several companies who are customers of both Plaintiff and Defendant.  (*Id.* at ¶ 12.)

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal.  *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010).  A movant must show: (1) a likelihood of success on the merits, (2) a threat of irreparable harm, which (3) outweighs any harm to the non-moving party, and (4) that the injunction would not adversely affect the public interest.  *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).[1]

## III. ANALYSIS

Plaintiff moves for a preliminary injunction solely on the basis of its breach of

---

[1]  For disfavored preliminary injunctions, the moving party faces a heavier burden on the likelihood-of-success and balance-of-harms factors.  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).  The parties dispute whether Plaintiff's requested injunction is a disfavored mandatory injunction, subject to a higher evidentiary burden, or is merely prohibitory.  (ECF No. 14 at 7; ECF No. 23 at 4.)  The Court need not resolve this dispute given that it finds Plaintiff has failed to demonstrate irreparable harm.

contract claim, and therefore the Court's analysis is limited to that claim.

Among the preliminary injunction factors, "a showing of probable irreparable harm is the single most important prerequisite." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted). "Without showing irreparable harm, [a party] cannot obtain a preliminary injunction." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017).

"[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original) (internal quotation marks omitted); *see Cobra N. Am., LLC v. Cold Cut Sys. Svenska AB*, 639 F. Supp. 2d 1217, 1230 (D. Colo. 2008) (denying preliminary injunction where the plaintiff failed to demonstrate that it would likely experience irreparable harm). "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005). Harm that is "merely serious or substantial" is not irreparable. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

Plaintiff argues that the Court should find irreparable harm and grant a preliminary injunction because the Agreement provides for equitable relief in the event of breach; Defendant has breached a non-compete clause of a contract; damages are

hard to quantify; and Defendant has attempted to steal customers and diminish

Plaintiff's competitive market position. The Court finds, however, that Plaintiff has failed

to put forth a prima facie case of irreparable harm.

A preliminary note: the Agreement terminated on August 1, 2019, and Section

13(e) did not necessarily survive termination. (ECF No. 14-1 at 8.) Plaintiff argues that

Section 15 on intellectual property incorporates Section 13 on permitted uses, and thus

Section 13 survives termination though Section 15. (ECF No. 26 at 8.) The Court need

not address this argument at this time. Assuming for the sake of analysis that Section

13(e) does not survive termination, Plaintiff could nonetheless seek an injunction based

on Defendant's past alleged breach to the extent that the breach results in continuing

harm to Plaintiff. *See DTC Energy Group, Inc. v. Firschfeld*, 912 F.3d 1263, 1274 (10th

Cir. 2018) (McHugh, J., concurring) ("an injunction can be based on the continuing

irreparable harm caused by Defendants' past breaches").

## A.  Section 17.2 on Irreparable Damage

A contract term specifying that a breach will constitute irreparable harm is alone

insufficient to satisfy the irreparable harm factor. *Dominion Video Satellite, Inc. v.*

*Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) ("*Dominion 2004*").

While a court may give weight to the parties' contractual agreements, it is not bound by

the parties' statements. *Id.* "[P]arties to a contract cannot, by including certain

language in [a] contract, create a right to injunctive relief where it would otherwise be

inappropriate." *Firemen's Ins. Co. of Newark v. Keating*, 753 F. Supp. 1146, 1154

(S.D.N.Y. 1990) (citing *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d

Cir. 1987) ("contractual language declaring money damages inadequate in the event of

a breach does not control the question whether preliminary injunctive relief is appropriate")). Instead, a court will "also identify other factors which establish that the harm is indeed irreparable," such as loss of trade secrets, difficulty in calculating damages, and loss of unique opportunity. *Dominion 2004*, 356 F.3d at 1266.

Plaintiff argues that Section 17.2 of the Agreement provides that a breach of Section 15 (the intellectual property provision) constitutes "irreparable damage," and Section 15 incorporates Section 13. (ECF No. 14 at 11; ECF No. 26 at 8.) Therefore, Plaintiff argues, a breach of Section 13(e) is "highly probative evidence of irreparable harm." (ECF No. 14 at 11.) In response, Defendant argues that Section 13 was not expressly listed in the contractual provisions for which the parties would assume irreparable damage. The Court need not resolve this issue either. Instead, the Court will assume for purposes of analysis that Section 13 was incorporated into Section 15, and thus that a breach of Section 13(e) qualifies as "irreparable damage" within the meaning of Section 17.2.

Even if the presumption of irreparable harm in Section 17.2 applies to a breach of Section 13(e), the Court is not bound by the parties' characterization of the harm. The Court will consider it as a factor in determining whether Plaintiff has suffered irreparable harm, but must also look at whether the harm to Plaintiff is indeed irreparable. *See Dominion 2004*, 356 F.3d 1266.

**B.     Injunction as a Preferred Remedy for Breach of Non-Compete Clause**

Plaintiff also argues that an injunction is the preferred remedy for a breach of a covenant not to compete, such as Section 13(e). (ECF No. 14 at 12.) Again, for purposes of analysis, the Court will presume without deciding that the covenant not to

compete is enforceable.

A court may not automatically find that irreparable harm results from the breach

of a non-compete provision. *Dominion 2004*, 356 F.3d at 1263. While irreparable harm

"often arises from the breach of an exclusivity clause," a court must nonetheless

examine whether the harms alleged are, in fact, irreparable. *Id.*; *see Big O Tires, LLC v.*

*Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1119 (D. Colo. 2010). Courts have thus

considered "inability to calculate damages, harm to goodwill, diminishment of

competitive positions in the marketplace, loss of employees' unique services, the impact

of state law, and the lost opportunities to distribute unique products." *Dominion 2004*,

356 F.3d at 1263. Accordingly, the Court will not presume irreparable harm based

solely on an alleged breach of a non-compete provision. Instead, the Court must find

evidence in the record establishing irreparable harm resulting from such a breach.

## C.    Difficulty of Ascertaining Damages

Next, Plaintiff argues that damages will be difficult to calculate. (ECF No. 14

at 12.) "Economic loss usually does not, in and of itself, constitute irreparable harm"

because business losses can be compensated in monetary damages. *Port City*

*Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) (internal

quotation marks omitted). However, if the potential loss threatens the continued viability

of the entire business, an injunction may be appropriate. *Cobra N. Am., LLC v. Cold*

*Cut Sys. Svenska AB*, 639 F. Supp. 2d 1217, 1231 (D. Colo. 2008).

Plaintiff explains that it is difficult to know how many current or potential

customers will use Defendant's product rather than Plaintiff's services. (ECF No. 14

at 12.) Plaintiff further suggests that its various pricing models (monthly, annual, or per

use) make it difficult to quantify lost revenue because it cannot know what pricing model a particular customer would have selected. (*Id.*) Plaintiff also claims that Defendant's actions have and will further erode Plaintiff's pricing, citing an instance in which Plaintiff reduced prices to keep a client. (*Id.* at 11–12; ECF No. 26 at 9.)

In the Court's view, these losses are purely economic. Plaintiff has not established that its monetary damages for business losses are so difficult to calculate that they are, in essence, irreparable. In discovery, Plaintiff will be entitled to relevant information from which Plaintiff may calculate its business losses, *e.g.*, a list of Defendant's customers who use Defendant's e-mail-previews service, how much the customers use the service, and pricing models used by Defendant. In calculating business losses, Plaintiff would be entitled to make reasonable assumptions about pricing and customers' choices based on its experience with similar customers and information from Defendant.

Similarly, Plaintiff may determine its losses due to price erosion by calculating the difference between the price absent competition from Defendant and the prices it had to offer, or may continue to offer, to retain clients. Although calculating damages may require some assumptions and inferences, such damages are not, as Plaintiff suggests, impossible to calculate, or even unusually difficult compared to similar cases.

Moreover, Plaintiff has not established facts to support a finding that Defendant's actions pose an imminent and actual existential business threat, particularly given that Plaintiff cannot cite a single instance of a customer taking its business to the Defendant. While Plaintiff states that there is a "significant risk" that it will be blocked from the market, it offers no facts in support of that conclusory opinion. The Court thus

9

concludes that, on the evidence before the Court, damages are not difficult to ascertain.

## D.      Inadequacy of Monetary Damages

Plaintiff argues that monetary damages are inadequate because Defendant's actions, particularly attempting to steal customers and advertising its e-mail-previews service as a replacement for Plaintiff's, will reduce Plaintiff's competitive market position.  (ECF No. 14 at 11.)  However, Plaintiff offers only conclusory allegations, rather than a factual basis for its claim.

To date, Plaintiff cannot cite any customer who has left Plaintiff for Defendant, much less a wholesale erosion of its customer base.  In *DTC Energy*, the defendant testified that he continued to solicit customers, and the district court found that the defendant's ongoing solicitation of efforts resulted in loss of customers, goodwill, and the plaintiff's competitive position.  912 F.3d at 1270–71.  Here, however, there is no evidence to suggest that Defendant has continued to solicit customers, that Plaintiff has lost or will lose customers, or that Plaintiff's goodwill has been otherwise diminished.  Moreover, to the extent that Defendant solicits Plaintiff's current or potential customers, under the circumstances, those losses are quantifiable business losses.

Plaintiff has also failed to establish that its market position or reputation will be irreparably harmed absent an injunction.  In *Dominion Video Satellite, Inc. V. EchoStar Sat. Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) ("*Dominion 2001*"), the Tenth Circuit upheld a preliminary injunction where the district court found that the plaintiff's preexisting business had already suffered, the plaintiff had begun to receive cancellations as a result of the defendant's actions, the plaintiff's business relied heavily on word-of-mouth business, the defendant's actions would likely damage the plaintiff's

reputation, and no remedy could repair the damage to the plaintiff's reputation and credibility.

Here, Plaintiff has failed to put forth any facts to support a finding that its reputation would be damaged by Defendant's actions. Nor has Plaintiff demonstrated that any injury to its unique competitive position is certain, actual, or great. *See Schrier*, 427 F.3d at 1267. Plaintiff has thus failed to put forth facts to support its claim that monetary damages would be inadequate to address its injuries.

## IV. CONCLUSION

On the record before the Court, Plaintiff has failed to show that it will be irreparably harmed absent the requested preliminary injunction. The Court therefore DENIES Plaintiff's Motion for a Preliminary Injunction (ECF No. 14). It does so, however, without prejudice to renewal of the Motion at such time, if ever, that Plaintiff has obtained sufficient evidence, from discovery in this case or otherwise, to remedy the factual deficiencies noted in this Order.


Dated this 22nd day of January, 2020.

BY THE COURT:

William J. Martínez
United States District Judge