**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:19-cv-03496-RMR-KLM

EMAIL ON ACID, LLC,

    Plaintiff,

v.

250OK, INC. and
VALIDITY, INC.,

    Defendants.

---

## ORDER

---

Pending before the Court is Defendants' Motion to Enforce Settlement Agreement, ECF No. 121. The motion is fully briefed and ripe for review. For the reasons set forth below, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

### I.  BACKGROUND

Plaintiff initiated this action asserting trade-secret and contractual claims against Defendant 250ok in 2019. *See* ECF No. 1. Following 250ok's subsequent acquisition by Defendant Validity, Plaintiff sought leave to file, and ultimately did file, an Amended Complaint asserting claims against both Defendants Validity and 250ok. *See* ECF Nos. 47, 50, & 61. Plaintiff was later acquired by non-party Mailgun Technologies, Inc. d/b/a Pathwire ("Pathwire") in June 2021, *see* ECF No. 108, and Pathwire, in turn, was acquired by non-party Sinch AB ("Sinch") in December 2021, *see* ECF No. 116.

In April 2022, with both of the original parties under new ownership, Plaintiff and Defendants agreed to pursue a settlement of this matter. The parties participated in a mediated settlement conference with Magistrate Judge Michael E. Hegarty, the magistrate judge then assigned to the case, on September 7, 2022. According to Defendants, after the parties had reached agreement on the material terms of a settlement, Plaintiff sought to introduce a new term to require the settlement also include a three-year covenant not to sue that would extend to Plaintiff's parent entities, even though those entities were not a party to the action. Plaintiff denies this was a new term and instead argues that the three-year covenant not to sue the non-party parent companies—also referred to as a "freedom to operate" clause—was always an essential condition of any settlement. Plaintiff further contends that because Defendants did not agree to this term, no meeting of the minds occurred as to the material settlement terms. Thus, this dispute arose between the parties regarding whether a binding settlement agreement had been reached during the September 7 settlement conference. On September 12, 2022, Magistrate Judge Hegarty entered a Minute Entry for Settlement directing the parties to "discuss whether a settlement was reached and, if so, [to] draft appropriate language effectuating it." ECF No. 118. The following day, Magistrate Judge Hegarty recused himself from this action due to his "involvement in conducting that Settlement Conference and in the interest of avoiding any appearance of impropriety." ECF No. 119. When it became clear that the parties would be unable to resolve their differences as to whether a binding settlement had been agreed upon, Defendants filed the instant motion on October 19, 2022. ECF No. 121. Plaintiff filed a response on

November 9, 2022, ECF No. 123, and Defendants filed a reply on November 23, 2022, ECF No. 126. Both parties filed attorney affidavits in support of their respective positions. ECF Nos. 121-1, 124. On March 15, 2023, the Court held an evidentiary hearing on the matter. ECF No. 145. During the hearing, the Court heard testimony from Magistrate Judge Hegarty, as well as attorneys Matthew McLaughlin and Zach Garthe, who participated in the September 7 settlement conference on behalf of the parties.[1]

## II.  LEGAL STANDARD

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). When deciding issues involving the formation, construction, and enforceability of a settlement agreement, federal courts apply state contract law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Both parties agree that Colorado law applies in this diversity action. Under Colorado law, the essential elements of an agreement to settle a case are "a manifestation of agreement (an offer and acceptance) on payment, release, and case dismissal terms (the consideration) between parties who have the capacity and authority to agree." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 685–86 (10th Cir. 2001).

---

[1] Plaintiff sought to preclude Magistrate Judge Hegarty from testifying at the evidentiary hearing under D.C.COLO.LCivR 16.6(e) and the Colorado Dispute Resolution Act. *See* ECF No. 140. On March 9, 2023, the Court overruled Plaintiff's objections, finding that the limited scope of testimony that Defendants sought to elicit from Magistrate Judge Hegarty did not run afoul of the mediation confidentiality prohibitions raised by Plaintiff. ECF No. 142 at 3–4. Accordingly, the Court permitted Magistrate Judge Hegarty to testify to non-confidential facts relevant to the determination of whether an enforceable settlement had been reached. *Id*.

In order for a settlement agreement to be binding and enforceable, there must be a "meeting of the minds" as to its terms and conditions. *H.W. Houston Constr. Co. v. Dist. Court*, 632 P.2d 563, 565 (Colo. 1981). Before the Court can find that an agreement has been reached, "it must appear that further negotiations are not required to work out important and essential terms." *Joseph Brazier, LTD. v. Specialty Bar Prod.'s Co*., No. 06-cv-01416-WDM-KLM, 2009 WL 690308, at *2 (D. Colo. March 12, 2009). "The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement." *City & Cnty. of Denver v. Adolph Coors Co*., 813 F. Supp. 1476, 1479 (D. Colo. 1993). Whether negotiations are sufficiently definite and final to create a binding contract is to be decided by the finder of fact. *Shoels v. Klebold*, 375 F.3d 1054, 1062 (10th Cir. 2004). "[E]vidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *I.M.A. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 & n.6 (Colo. 1986) (citations omitted).

Later dissatisfaction with the terms of a compromise agreement is not sufficient grounds to set it aside. *Brackens v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 07-cv-01953-REB-KMT, 2008 WL 906121, at *3 (D. Colo. Apr. 1, 2008). "The law favors compromise and settlement and such resolution will typically be sustained by the court." *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997) (citing *R.T.C. v. Avon Center Holdings, Inc*., 832 P.2d 1073, 1075 (Colo. App. 1992)).

### III. DISCUSSION

#### A. Motion to Enforce

Defendants' position is that the parties reached a binding agreement on payment, release, and dismissal terms during the September 7 settlement conference. Specifically, Defendants claim that they agreed to pay Plaintiff $1.6 million within 90 days of the agreement and to execute a general, mutual release that (at Plaintiff's request) extended to Plaintiff's parent companies, Pathwire and Sinch. *See* ECF No. 146 at 68:14–21. Plaintiff does not meaningfully dispute these terms. However, Defendants contend that Plaintiff subsequently demanded that the settlement also include a three-year covenant not to sue extending to Plaintiff's parent entities. According to Defendants, this subsequent demand neither affects the parties' agreement as to any material settlement term nor precludes enforcement of those terms to which the parties had already affirmatively agreed. In response, Plaintiff counters that the "freedom to operate" clause to which Defendants undisputedly did not agree was a material term of any potential settlement agreement and inextricably linked to the payment sum. Plaintiff therefore argues that the parties failed to reach a meeting of the minds during the settlement conference, and there is no settlement for the Court to enforce. ECF No. 123 at 2.

Having considered the parties' submissions and oral testimony, the relevant law, and the record in this case, the Court finds that the parties entered into an enforceable oral settlement agreement during the September 7, 2022, settlement conference conducted by Magistrate Judge Hegarty. Significantly, Defendants' account of the events surrounding the oral settlement agreement was corroborated by the testimony of

5

Magistrate Judge Hegarty. During the evidentiary hearing, Magistrate Judge Hegarty testified unequivocally that "[the parties] had reached an agreement on all material terms. I would not have told them you have a deal unless all material terms were agreed, and so that's what I determined at the time." ECF No. 146 at 16:2–5. Judge Hegarty's perceptions and conclusions were founded on and informed by his personal recollection of the parties' conduct during the settlement conference and his experience conducting more than 1,300 settlement conferences. He based his conclusion that the parties reached an agreement on objective manifestations of assent exhibited by the parties during the September 7 settlement conference. *See id*. at 43:6–10 ("All I can say is that I believe there was a settlement. I told both sides you have a deal. I don't remember the specific terms, but there was nothing material left to discuss. Nobody had raised anything remaining that was not agreed by the parties.").

This mediated settlement conference occurred before a judicial officer of this Court. Judge Hegarty is the most senior magistrate judge in this district with a wealth of experience in handling contentious litigation and settlement conferences. Plaintiff's suggestion that Judge Hegarty "glossed over" or "did not understand what was being discussed" in regard to certain settlement terms, *see id*. at 85:22–23 & 95:12, is simply not credible given the Judge's extensive experience and the evidence before this Court. Thus, the Court finds that the parties emerged from the September 7 settlement conference with terms that were sufficiently certain and clear for their settlement agreement to be enforced. Specifically, the parties agreed to the exchange of $1.6 million within 90 days for dismissal of the litigation with prejudice, and a general release that

covered Plaintiff's parent entities as well as the parties. Plaintiff's eleventh-hour attempt to renegotiate to include other terms does not change the essential terms that the parties agreed to during the settlement conference. Accordingly, the parties are bound by these terms. *See Woods v. Denver Dep't of Revenue*, 45 F.3d 377, 378 (10th Cir. 1995) ("[A] party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind.") (citation omitted).

Plaintiff's position essentially boils down to an argument that its "actual" intent differed from the objective manifestation of that intent communicated to Magistrate Judge Hegarty during the settlement conference. While that may be true, it does not change the outcome here. The parties' objective manifestation controls—and Plaintiff, through counsel, objectively manifested agreement to the material payment, dismissal, and release terms. The additional "freedom to operate" term that Plaintiff sought to add goes beyond what the parties contemplated during the course of their negotiations and is not material to enforcement of the settlement terms otherwise agreed upon by the parties. "The fact that a party later changes his mind or is dissatisfied with the bargain he struck are not permissible grounds to defeat enforcement of a valid settlement agreement." *Rauch v. Sutphin Elec. Motors, Corp.*, No. 05-cv-02429-REB-BNB, 2007 WL 184667, at * 4 (D. Colo. Jan. 19, 2007).

Moreover, under Colorado law, "[t]he fact that parties contemplate preparing a written agreement does not necessarily render a verbal agreement invalid." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). Where there is a complete agreement, the fact that certain formalities remain to be performed, such as the

execution of written releases, does not reduce such agreement to the status of mere negotiations. *Adolph Coors Co.*, 813 F. Supp. at 1481. The oral settlement agreement reached at the September 7 settlement conference with Magistrate Judge Hegarty is thus enforceable despite the fact that the parties could not agree on and did not execute a later written settlement agreement. *See id*.

Here, the essential terms of the settlement agreement as stated by Defendants were monetary compensation, dismissal of the litigation, and execution of mutual, general releases extending to Plaintiff's parent companies—and the record demonstrates that the parties reached agreement as to these essential terms. The Court therefore finds that the essential terms of the agreement were fully negotiated and are "clear, unambiguous, and capable of enforcement." *Id*. at 1479.

### B. Attorneys' Fees

Both sides have also requested attorneys' fees and costs incurred in connection with litigating the motion to enforce. Generally, each party bears its own costs of litigation unless statutory authority provides otherwise or an exception to the rule applies. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). A district court may grant attorneys' fees against a losing party when it has acted in bad faith, vexatiously, or wantonly. *Id*. The Court finds that there is insufficient evidence demonstrating that either party acted in bad faith, vexatiously, or wantonly here. Accordingly, the Court declines to exercise its discretion to award fees and costs.

Defendants' Motion is therefore DENIED to the extent that Defendants seek attorneys' fees and costs associated with the filing of this Motion. The Court also denies Plaintiff's request for attorneys' fees and costs.

## IV.     CONCLUSION

For the reasons set forth herein, Defendants' Motion to Enforce Settlement Agreement, ECF No. 121, is GRANTED IN PART AND DENIED IN PART. The Motion is granted as to the enforcement of the settlement agreement but denied as to Defendants' requests for attorneys' fees and costs. Plaintiff's Motion to Strike the Declaration of Matthew T. McLaughlin, ECF No. 125, is therefore DENIED AS MOOT.

IT IS FURTHER ORDERED that the parties shall file dismissal papers after payment of the settlement amount by Defendants and by no later than July 10, 2023. This action will be dismissed with prejudice upon the filing of such papers.

DATED:  April 6, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge